# United States Court of Appeals
## For the Eighth Circuit

_____

No. 20-2168

_____

Anthony Vines, on behalf of himself and all others similarly situated; Dominique Lewis, on behalf of himself and all others similarly situated

*Plaintiffs - Appellants*

v.

Welspun Pipes Inc.; Welspun Tubular LLC; Welspun USA, Inc.

*Defendants - Appellees*

_____

Appeal from United States District Court
for the Eastern District of Arkansas - Central

_____

Submitted: April 15, 2021
Filed: August 18, 2021

_____

Before SMITH, Chief Judge, COLLOTON and ERICKSON, Circuit Judges.

_____

SMITH, Chief Judge.

Anthony Vines and Dominique Lewis brought a class action against the defendant companies (collectively, "Welspun") under the Fair Labor Standards Act (FLSA) and the Arkansas Minimum Wage Act (AMWA). Vines and Lewis negotiated a settlement agreement with Welspun for the wage claim and attorneys' fees. The

district court did not approve the settlement because it determined that the claim and fees were not separately negotiated. So the parties tried again, this time presenting the district court with only the wage-claim portion of the settlement. The district court approved the wage-claim settlement. Afterward, the parties did not settle on attorneys' fees. Vines and Lewis moved for an award of attorneys' fees and costs. The district court partially granted the motion, awarding $1.00 in fees. Alternatively, the district court noted that it would award $25,000 in fees if $1.00 was improper. Vines and Lewis appeal the district court's determination that the amounts were not separately negotiated and the district court's fee award. We vacate the award and remand.

## I. *Background*

Vines and Lewis brought a class action against Welspun, alleging that Welspun had underpaid its employees by improperly rounding the time employees worked in the company's favor. They made claims under federal law (FLSA) and state law (AMWA).

The parties began negotiating a settlement. Eventually, they came to an agreement for the plaintiffs' wage claim, attorneys' fees, and costs. Under the agreement, Welspun would pay $211,666.36 to the first opt-in class and certain amounts to each member of the second opt-in class, whose members had not yet been determined. Welspun would also be required to pay the Sanford Law Firm, PLLC, (SLF) $89,000 in attorneys' fees and costs for the first opt-in class and additional attorneys' fees that were dependant on the number of people opting into the second class. In September 2019, the parties filed a joint motion for approval of the settlement agreement. The district court denied the joint motion because it could not determine the reasonableness of the agreement without certain information, such as the number of people in each opt-in class, SLF's billing records, and an example of SLF's contingency-fee agreements with the opt-in classes.

Following the denial of the joint motion, the parties went back to the drawing board and reached a new agreement. They moved for its approval in March 2020. The first opt-in class would receive the same amount—$211,666.36. But this time the second opt-in class, whose members were now determined, was slated to get $57,673.24. SLF's attorneys' fees and costs were also set at $96,000. And the parties included with the motion a breakdown of the classes' members, SLF's billing records, and examples of SLF's contingency agreements. After reviewing these documents, the district court again denied the parties' joint motion. It determined that the parties had not negotiated the plaintiffs' wage claim separately from the attorneys' fees, as required by *Barbee v. Big River Steel, LLC*, 927 F.3d 1024, 1027 (8th Cir. 2019).

Finally, in May 2020, the parties submitted for approval a settlement agreement that included amounts only for the wage claim. The amounts were the same as the parties' March 2020 agreement. This time, the district court approved the settlement—finding it reasonable and negotiated separately from the attorneys' fees—and dismissed the plaintiffs' claims. The parties did not come to a new agreement regarding attorneys' fees and costs.

Then, the plaintiffs moved for attorneys' fees. They requested that SLF be awarded $96,000 because that was the amount the parties had previously negotiated. Alternatively, the plaintiffs argued that $96,000 was a reasonable fee based on the lodestar fee-calculation method. The district court granted the motion for attorneys' fees but awarded only $1.00 because of certain of SLF's billing practices. The district court also noted that it would award $25,000 if the $1.00 award was vacated on appeal.

II. *Discussion*

Vines and Lewis raise three issues on appeal. First, they assert that the district court erred in denying the March 2020 motion for approval of settlement based on *Barbee*. Second, they argue that the district court abused its discretion in awarding

$1.00 or alternatively $25,000 as a reasonable attorneys' fee. Finally, they ask that if we remand, we reassign their case to a different judge.

A. *Settlement Approval and* Barbee

We have acknowledged a split among the circuits over whether judicial approval is required for all FLSA settlements. *Barbee*, 927 F.3d at 1026. In *Barbee*, we declined to take a side on the issue and instead provided a narrow holding about the settlement of FLSA attorneys' fees: "[A]ny authority for judicial approval of FLSA settlements . . . does not extend to review of settled attorney fees." *Id.* at 1027. But, assuming that judicial approval was required for the FLSA claim, we left to district courts "the authority to ensure [(1)] the attorney fees were in fact negotiated separately and without regard to the plaintiff's FLSA claim, and [(2)] there was no conflict of interest between the attorney and his or her client." *Id.* at 1027 n.1. We reasoned that the FLSA's text treats attorneys' fees as distinct from the underlying wage claim and thus judicial approval of attorneys' fees would not "serve[] the 'FLSA's underlying purpose' of protecting workers' rights." *Id.* at 1027 (quoting *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 206 (2d Cir. 2015)). So long as "the parties negotiate the reasonable fee amount separately and without regard to the plaintiff's FLSA claim, the amount the employer pays to the employees' counsel has no bearing on whether the employer has adequately paid its employees in a settlement." *Id.*

Vines and Lewis argue that the district court overstepped its authority under *Barbee* to ensure that their wage claim was separately negotiated from their attorneys' fees.[1] They urge that the district court erred by finding that the March 2020 agreement

---

[1]Neither the plaintiffs nor the defendants has asked us to take a side in the circuit split regarding judicial approval of FLSA settlements. They assume that judicial approval is required and focus on what it means for the FLSA claim and attorneys' fees to be separately negotiated. Thus, we likewise focus our analysis on that issue. We leave the question of whether judicial approval is required for all

-4-

was not separately negotiated because it later found that the May 2020 agreement regarding only the FLSA claim was reasonable and fair, although the payments for the FLSA claim were equal amounts in both agreements.

We have not yet determined what standard applies to our review of a district court's determination that attorneys' fees were not separately negotiated from the underlying FLSA claim. The district court's conclusion regarding the separateness of the negotiations is a factual one. And "we review the district court's factual findings and credibility determinations for clear error." *Qwest Commc'ns Corp. v. Free Conferencing Corp.*, 837 F.3d 889, 895 (8th Cir. 2016) (quoting *Affordable Cmtys. of Mo. v. Fed. Nat'l Mortg. Ass'n*, 815 F.3d 1130, 1133 (8th Cir. 2016)); *see also* Fed. R. Civ. P. 52(a)(6). We will thus proceed with a clear-error review. Clear error exists "only when we are left with the definite and firm conviction that a mistake has been committed." *United States v. Williams*, 605 F.3d 556, 570 (8th Cir. 2010) (quotation omitted).

We conclude that there is sufficient evidence in the record for the district court to have determined that the wage claim and the attorneys' fees were not separately negotiated. The district court considered three factors to support its decision.

First, the parties simultaneously negotiated the wage claim and the attorneys' fees over e-mail. In some of those e-mails, the settlement was listed as a lump sum, inclusive of the wage claim, attorneys' fees, and costs. In other e-mails, the amounts were listed separately. But in total, the district court determined that the negotiations

---

FLSA settlements for another day when the issue is squarely before us. *See Melgar v. OK Foods*, 902 F.3d 775, 779 (8th Cir. 2018) ("Since neither party discusses whether district court approval [for FLSA settlements] is required, we need not address this issue. Instead, we will assume without deciding that the district court has a duty to exercise some level of review of the Agreement and the attorneys' fee award.").

made clear "that an agreement on both liability damages and lawyers' fees was required before Plaintiffs' lawyers would agree to finalize settlement of the liability damages." *Vines v. Welspun Pipes, Inc.*, 453 F. Supp. 3d 1156, 1159 (E.D. Ark. 2020) (emphasis omitted).

Second, the parties' joint motion for approval of the settlement indicated that the settled-on attorneys' fees were not primarily based on SLF's "total amount of billing to date" but instead on "the likely total amount of billing should [the] case . . . proceed through extensive discovery, pre-trial[,] and trial." Second Renewed Joint Mot. to Dismiss with Prejudice & Approval of Settlement Agreement at 7, *Vines v. Welspun Pipes, Inc.*, No. 4:18-cv-00509-BRW (E.D. Ark. 2020), ECF No. 81. The district court reasoned that if the wage claim and attorneys' fees "[h]ad . . . been negotiated separately, [Welspun] would not have been worried about additional lawyers' fees exposure from discovery or trial, because they would have known there was not going to be additional discovery or trial." *Vines*, 453 F. Supp. 3d at 1160.

Third, the district court identified an e-mail from SLF to Welspun that attempted to address Welspun's concern about the size of the attorneys' fees. SLF "underst[oo]d the reticence on [Welspun's] part regarding the attorneys' fees" but encouraged Welspun to "focus[] on the global offer," which would be "a substantial discount" from what Welspun could face without settlement. *Id.* (quoting Addendum to Second Renewed Joint Mot. to Dismiss with Prejudice & Approval of Settlement Agreement, Ex. A, at 7, *Vines v. Welspun Pipes, Inc.*, No. 4:18-cv-00509-BRW (E.D. Ark. 2020), ECF No. 82-1). According to the district court, SLF made this "threat of additional fees 'should this go to trial' to pressure [Welspun] to pay lawyers' fees that" it otherwise would not have paid. *Id.* In other words, if the attorneys' fees and the wage claim had been negotiated separately, there would have been no threat of trial because the wage claims would have been definitively settled, regardless of bloated attorneys' fees.

-6-

We conclude that the district court did not clearly err when it denied the parties' joint motion for approval of the settlement based on its conclusion that the FLSA claims and the attorneys' fees were not separately negotiated. The record before the district court supported that conclusion.

B. *Attorneys' Fees*

We review an award of attorneys' fees for an abuse of discretion. *Phelps-Roper v. Koster*, 815 F.3d 393, 398 (8th Cir. 2016). Under the FLSA, district courts "shall . . . allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b). To calculate reasonable attorneys' fees, federal courts begin by "employ[ing] the lodestar method, which multiplies the number of hours worked by the prevailing hourly rate." *Childress v. Fox Assocs., LLC*, 932 F.3d 1165, 1172 (8th Cir. 2019). The court "may rely on reconstructed time entries to calculate the hours worked if those entries satisfactorily document the time," but it "should exclude hours that were not reasonably expended from its calculations." *Id.* (cleaned up). Then, it "may reduce [the lodestar] if a plaintiff does not obtain all the relief . . . sought." *Id.* When reducing the lodestar, "[t]he district court also may consider other factors identified in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–719 [(5th Cir. 1974)]." *Hensley v. Eckerhart*, 461 U.S. 424, 434 n.9 (1983).

Here, the district court did not calculate the lodestar. Initially, it properly determined the prevailing hourly rate for SLF's attorneys. But its analysis did not multiply the hourly rate by the reasonable number of hours worked. In fact, the district court did not determine the number of hours SLF reasonably worked, nor did it multiply the hourly rate by anything. Instead, the district court only broadly noted SLF's billing practices that the court believed warranted a reduction in reasonably expended hours. Because the district court did not determine the number of hours reasonably expended, it could not have multiplied that number by the hourly rate. Consequently, it did not calculate the lodestar.

The district court must calculate the lodestar. *See Jones v. RK Enters. of Blytheville, Inc.*, 632 F. App'x 306, 307 (8th Cir. 2016) (unpublished per curiam) ("To determine a reasonable attorney's fee [under the FLSA], the district court was required to first calculate a lodestar, by multiplying the number of hours reasonably expended on litigation by a reasonable hourly rate, and to then consider whether the lodestar amount should be reduced, based on appropriate considerations."). Although the district court need not explicitly state which hours it finds reasonable, it must at least calculate the hourly rate and the reasonable number of hours worked. *See Fires v. Heber Springs Sch. Dist.*, 565 F. App'x 573, 576 (8th Cir. 2014) (unpublished per curiam) ("The district court's explicit consideration of both of the inputs into the lodestar is sufficient for us to conclude that the district court performed the lodestar calculation."). It may then reduce the lodestar calculation by considering the appropriate factors, including unprofessional conduct. When district courts follow this objective formula, it "permits meaningful judicial review." *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 552 (2010).

Both the Supreme Court and this court have explained, outside the FLSA context, that the lodestar calculation is usually necessary. *Blanchard v. Bergerson*, 489 U.S. 87, 94 (1989) (explaining that *Hensley* "directed lower courts to make an initial estimate of reasonable attorney's fees by [calculating the lodestar]" and calling "the lodestar approach . . . the centerpiece of attorney's fee awards"); *H.J. Inc. v. Flygt Corp.*, 925 F.2d 257, 259–60 (8th Cir. 1991) ("The approach followed by this circuit requires the calculation of a lodestar figure . . . ."). As the dissent points out, the Supreme Court recognized a carve out to this general rule in *Farrar v. Hobby*, 506 U.S. 103 (1992). The *Farrar* Court, however, applied that carve out to limited circumstances: The district court may skip the lodestar calculation if it instead only "considered the amount and nature of damages awarded"—that is, if it considered "the amount of damages awarded as compared to the amount sought." *Id.* at 114–15. Skipping the lodestar calculation in these limited circumstances makes sense because "the degree of success obtained" is "'the most critical factor' in determining the

reasonableness of a fee award." *Id.* at 114 (quoting *Hensley*, 461 U.S. at 436). Here, the district court did not look only at the settlement award; therefore, *Farrar*'s carve out does not apply.

The two Eleventh Circuit cases cited by the dissent that affirmed an award of $0 in attorneys' fees are distinguishable. Both of those cases had special circumstances not present here. In *Sahyers v. Prugh, Holliday & Karatinos, P.L.*, the Eleventh Circuit issued an extremely limited ruling about a plaintiff's lawyer who "sued his fellow lawyers" without giving a pre-filing warning, which disregarded "lawyer-to-lawyer collegiality and civility." 560 F.3d 1241, 1245 (11th Cir. 2009). The court "strongly caution[ed] against inferring too much from [the] decision" and was careful to explain that it expressed no opinion about the decision's application to "cases in which lawyers are not parties." *Id.* at 1246. Then, in *Batista v. South Florida Woman's Health Assocs., Inc.*, an unpublished opinion, the Eleventh Circuit extended the *Sahyers* rule to a new category of cases: nuisance litigation. 844 F. App'x 146, 157–60 (11th Cir. 2021) (unpublished per curiam). "[N]uisance litigation is characterized not only by the extortionate nature of the action . . . but also by the frivolity and groundless nature of the claim." *Id.* at 159. In *Batista*, the defendant had mailed the relevant paycheck to the plaintiff before suit, but the paycheck never reached the plaintiff. *Id.* at 157. Immediately after suit, the defendant wrote the plaintiff a new check, but the plaintiff's lawyer demanded more for attorney's fees. *Id.* at 157–58. The Eleventh Circuit explained that the lawsuit was groundless because the case "involved a lost paycheck—nothing more"; either a call before filing suit or accepting the rewritten check would have solved the plaintiff's case. *Id.* at 157–58.

Neither the *Sahyers* scenario (where lawyers are parties and opposing counsel acts uncivilly) nor the *Batista* scenario (where the lawsuit is frivolous or groundless) are present here. *Cf. Tyler v. Corner Constr. Corp., Inc.*, 167 F.3d 1202, 1206 (8th Cir. 1999) (explaining when the plaintiff has received an award from a "nuisance

-9-

settlement," which is a settlement "despite the fact that the case against the defendant is frivolous or groundless," an award of attorney's fees would be unjust). The plaintiffs in this case chinned the bar; their claim was not frivolous or groundless, and lawyers are not parties in this case.

Based on the record before us, it is unlikely that a $1.00 attorneys' fee is reasonable. The plaintiffs obtained an almost $270,000 settlement, and SLF likely performed some reasonably expended hours. But without any reference to the lodestar amount, the district court said it awarded $1.00 because it could not award any less. *Vines v. Welspun Pipes, Inc.*, No. 4:18-cv-00509-BRW, 2020 WL 3062384, at *10 (E.D. Ark. June 9, 2020) ("[I]f it weren't for the FLSA's use of the phrase 'shall' award a lawyers' fee[,] I would be inclined to award nothing at all."). Without a supporting rationale based on the lodestar calculation and reduction, this was error. *Compare Houser v. Matson*, 447 F.2d 860, 863 (9th Cir. 1971) (finding that $1.00 in attorneys' fees for an FLSA case "frustrated Congressional purpose by leaving the onus of counsel fees entirely upon the successful [plaintiffs]"), *with Rampersaud v. Ackeridge Commc'ns, LLC*, No. 6:06-cv-125-Orl-31KRS, 2006 WL 4835924, at *4, 5 (M.D. Fla. Aug. 22, 2006) (awarding $1.00 in attorneys' fees in an FLSA case because the billing documents that the plaintiff's attorneys submitted "provided no description of the work [the attorneys had] performed on the case" and thus gave the court "no basis to assess a lodestar").

The district court also noted that, if its $1.00 award was improper, it would award $25,000 because that was "the amount unreasonably rejected by SLF in [Welspun's] August 2019 [offer]." *Vines*, 2020 WL 3062384, at *10. This amount also lacks a basis in the lodestar calculation. It may be that $25,000 is a reasonable amount of attorneys' fees, but we cannot conduct a meaningful review of the district court's determination on this record.

Because the record contains no lodestar calculation, we vacate the award of attorneys' fees. We note that "[i]t is well within the district court's broad discretion . . . to consider . . . the party's unprofessional conduct in the case." *Wescott Agri-Prods., Inc. v. Sterling State Bank, Inc.*, 682 F.3d 1091, 1095 (8th Cir. 2012). But this consideration should come after the district court calculates the lodestar and has moved on to reducing that number. *Cf. Jaquette v. Black Hawk Cty.*, 710 F.2d 455, 459 (8th Cir. 1983) (affirming attorneys' fees where the lodestar was reduced because "the hours claimed were 'excessive,' spent on issues of 'marginal merit,' and . . . the plaintiff's attorneys were guilty of 'misconduct' in conducting the litigation").

## C. *Reassignment*

Finally, Vines and Lewis ask us to reassign this case on remand. They did not move for recusal below. There is "[p]recedent . . . in this circuit for reviewing recusal claims first raised on direct appeal. . . . However, when a recusal claim is not raised below, we . . . review only for plain error." *Fletcher v. Conoco Pipe Line Co.*, 323 F.3d 661, 663 (8th Cir. 2003). Under plain-error review, our review "is narrow and confined to the exceptional case where error has seriously affected the fairness, integrity, or public reputation of the judicial proceedings. We will only reverse if the error prejudiced the substantial rights of the [appellants] and would result in a miscarriage of justice." *Id.* at 663–64 (cleaned up).

Under 28 U.S.C. § 455(a), "disqualification is required if a reasonable person who knew the circumstances would question the judge's impartiality, even though no actual bias or prejudice has been shown." *Id.* at 664 (quoting *United States v. Tucker*, 78 F.3d 1313, 1324 (8th Cir. 1996)). Vines and Lewis must overcome a heavy burden because "a judge is presumed to be impartial." *Id.* (quoting *Pope v. Fed. Express Corp.*, 974 F.2d 982, 985 (8th Cir. 1992)). That burden is made heavier still under plain-error review.

Vines and Lewis point us to various judicial rulings by the district court that they claim show that the district court is biased against them. But "'[j]udicial rulings alone almost never constitute a valid basis for a bias or partiality motion,' and 'judicial remarks . . . that are critical or disapproving of, or even hostile to' a party 'ordinarily do not support a bias or partiality challenge.'" *United States v. Thomason*, 991 F.3d 910, 916 (8th Cir. 2021) (second alteration in original) (quoting *Liteky v. United States*, 510 U.S. 540, 555 (1994)). On this record, the plaintiffs have failed to show under plain-error review that the district court would be unable to adequately award attorneys' fees on remand. In fact, the district court has shown that it is capable of appropriately determining reasonable attorneys' fees for SLF after a remand; it has done it before. *See Jones v. RK Enters. of Blytheville, Inc.*, 672 F. App'x 613 (8th Cir. 2016) (unpublished per curiam). We decline to reassign the case.

## III. *Conclusion*

We vacate the district court's award of attorneys' fees and remand for proceedings consistent with this opinion.

COLLOTON, Circuit Judge, dissenting.

I would affirm the order of the district court, and I commend to the interested reader a series of orders entered by the district court in this drawn-out litigation over attorney's fees. *See Vines v. Welspun Pipes, Inc.*, No. 4:18-CV-00509-BRW, 2020 WL 3062384 (E.D. Ark. June 9, 2020); R. Doc. 90; R. Doc. 88; R. Doc. 85; *Vines v. Welspun Pipes, Inc.*, 453 F. Supp. 3d 1156 (E.D. Ark. 2020); R. Doc. 60. These filings describe, in Judge Wilson's inimitable style, a course of attorney conduct in cases under the Fair Labor Standards Act that is a stain on our system.

The basic problem is this: When a lawyer representing employees who sue for unpaid wages simultaneously engages in settlement negotiations over the merits of the claim and his own fee, "a significant conflict of interest between client and

-12-

attorney is created." *Staton v. Boeing Co.*, 327 F.3d 939, 964 (9th Cir. 2003) (quoting *Court Awarded Attorney Fees, Report of the Third Circuit Task Force*, 108 F.R.D. 237, 266 (1985)). In combined negotiations, plaintiffs' counsel negotiates "a fee ultimately destined for his pocket" when "all thoughts ought to be singlemindedly focused on" the interests of his clients. *Obin v. Dist. No. 9 of Int'l Ass'n of Machinists & Aerospace Workers*, 651 F.2d 574, 582 (8th Cir. 1981). The defendant employer, for its part, is interested "only in disposing of the total claim," and is therefore indifferent to the allocation of a settlement between plaintiffs' counsel and the plaintiffs. *Staton*, 327 F.3d at 964 (internal quotation omitted). With no resistance from the defendant, there is little to deter plaintiffs' counsel from urging "settlement at a low figure or on a less-than-optimal basis in exchange for red-carpet treatment on fees." *Weinberger v. Great N. Nekoosa Corp.*, 925 F.2d 518, 524 (1st Cir. 1991). The district court was thus well advised to scrutinize the settlement for signs that such a conflict of interest infected the agreement.

In conducting its review, the district court uncovered not only that the law firm representing the plaintiffs failed to negotiate the merits and attorney's fees separately, *see Barbee v. Big River Steel, LLC*, 927 F.3d 1024, 1027 n.1 (8th Cir. 2019), but that the conflict of interest tainted the entire settlement agreement. During negotiations, the law firm attempted to persuade the defendant, Welspun Pipes, to agree to an exorbitant amount of attorney's fees by emphasizing that the settlement was a "substantial discount" on total liability and fees, and that Welspun Pipes was getting a "pretty sweet deal" on some of the plaintiffs' claims. R. Doc. 82-1, at 7. The district court cried foul, reasoning that the law firm's attorneys "knew the hand they were dealt" with a solid case on the merits, and "used that to squeeze excessive fees." *Vines*, 453 F. Supp. 3d at 1160.

The district court concluded that such conduct deserves no reward, and attempted to combat the abusive practices by minimizing the attorney's fee under the statute. *See* 29 U.S.C. 216(b). As other courts have recognized, under the Fair Labor

Standards Act, "a reasonable fee may be no fee at all." *Batista v. S. Fla. Woman's Health Assocs., Inc.*, 844 F. App'x 146, 157 (11th Cir. 2021) (per curiam); *see id.* at 152-56 (collecting cases awarding no fees). Where attorney conduct stands "in stark contrast to the behavior expected of an officer of the court," an award of a bare minimum fee is a proper exercise of discretion. *Sahyers v. Prugh, Holliday & Karatinos, P.L.*, 560 F.3d 1241, 1245 (11th Cir. 2009). This court has applied the same reasoning in the context of a contractual fee award, saying that it is "well within the district court's broad discretion in reviewing a request for fees to consider not only the amount of the fees, but also the party's unprofessional conduct in the case." *Wescott Agri-Prods., Inc. v. Sterling State Bank, Inc.*, 682 F.3d 1091, 1095 (8th Cir. 2012).[2]

The majority, however, is fixated on whether the district court calculated a "lodestar amount" of attorney's fees based on the number of hours worked and the appropriate hourly rate. That concern is misplaced here: the whole point of the district court's order is that the lodestar amount of fees was immaterial on this record, because counsel's egregious conduct warranted an award of a *de minimis* fee, if any at all.

A lodestar analysis is not invariably required. In appropriate circumstances, a district court "may lawfully award low fees or no fees without . . . multiplying 'the number of hours reasonably expended . . . by a reasonable hourly rate.'" *Farrar v. Hobby*, 506 U.S. 103, 115 (1992) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)). "[E]ven before calculating a lodestar or wading through all the reasonableness factors," it may be clear that "the reasonable fee is no fee at all." *Id.* at 118 (O'Connor, J., concurring). Minimal success by a prevailing party is one

---

[2]The district court here thought the word "shall" in the statute required an award of at least one dollar, so we need not resolve whether an award of no fee at all would be consistent with the direction to "allow a *reasonable* attorney's fee." 29 U.S.C. § 216(b) (emphasis added).

circumstance in which the routine lodestar analysis is not required; unacceptable attorney conduct should be another. Our own precedent in *Wescott Agri-Products* upheld a decision to deny attorney's fees based on unprofessional conduct where the district court refused even to look at the prevailing party's billing records. 682 F.3d at 1092, 1094.

The majority declares it "unlikely" that the award of one dollar is reasonable, but does not fully consider the district court's reasons for the award. The district court deemed it "unacceptable" that the law firm "was hanging over Defendant's head the threat of the fees that might be incurred if it did not pay the unreasonable (and unearned) fee [the law firm] was demanding." *Vines*, 2020 WL 3062384, at *8. The court found that counsel's conduct was "contrary to the purpose of fee-shifting statutes, evidence of bad faith, and possibly in violation of the Rules of Professional Ethics." *Id*. at *9.

Concerned that lawyers have "chosen to hijack these statutes for their own selfish ends," the district court emphasized that "FLSA cases are not conduits for funneling unearned fees into lawyers' pockets." *Id*. at *9 (internal quotation omitted). The court awarded only one dollar in fees, not simply because of an everyday concern about "billing practices," *ante*, at 3, or merely because the court "could not award any less." *Ante*, at 10. Rather, the court cited the law firm's "incorrigible practices, the unreasonable $115,000 fee demand, [the law firm's] attempts to drum up billable hours by extending the case, the numerous billing record deficiencies, and the attempted extortion of $96,000 in unearned fees by negotiating contrary to *Barbee*." *Vines*, 2020 WL 3062384, at *10.

The litigation did achieve a settlement for the employees, but it came in a "relatively straightforward" FLSA case that involved "very little 'legal' work," with the employer doing the "heavy lifting" by generating the payroll summary. *Id*. at *8. The case ordinarily would have justified a modestly greater fee award for lawyers

who processed a simple resolution, but the court concluded that the law firm forfeited its right to such a fee by engaging in exploitative conduct and exhibiting "singular intransigence." *Id*. at *10.

On this record, the district court did not abuse its discretion in making the award of one dollar. The multiple orders specify the reasons for the decision, permit meaningful appellate review, and provide appropriate grounds for minimizing the fee award. The district court properly "refused to reward—and thereby to encourage"—counsel's litigation conduct. *Sahyers*, 560 F.3d at 1245. The majority's rationale, by contrast, portends a no-lose situation for cunning plaintiffs' lawyers: try to extract unearned fees from the defendant while combining a negotiation of merits and fees, but if the district court recognizes the tactic, then settle for the standard lodestar amount that would have been the proper fee award in the first place. One hopes that the district court's acknowledged authority to reduce the lodestar amount based on unprofessional conduct may provide a modicum of deterrence, *see ante*, at 8, but the message coming from the majority's decision seems quite different.

This court observed in *Wescott Agri-Products* that "bedrock principles" concerning "civility, professionalism, integrity, efficiency, expediency, and deterrence" supported a denial of attorney's fees in that case. 682 F.3d at 1096. As we said then, "[i]f our courts more often recognized and enforced these principles, maybe some . . . litigation excesses afflicting the court system would decline." *Id*. Given the time and energy expended by the district court to rein in the offending attorney conduct in this case, it seems to me that this court at least should acknowledge the district court's rationale for the fee award and address head-on whether it is sufficient to justify the decision. In my view, the district court's effort and bottom-line conclusion deserve the support of this court, and I would affirm the order.

_____